IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| A.V. a minor, by his next friends and parents, RENE VILLARALDO and INDHIRA LOPEZ, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Case No. 07-630-KI |
| vs. | ) ) | OPINION AND ORDER |
| HILLSBORO SCHOOL DISTRICT 1J; JEREMY LYON; TIM BISHOP; and JEFF HAZEN, | ) ) ) ) | |
| Defendants. | ) ) | |

Kevin C. Brague
The James Law Group
121 S.W. Morrison Street, Suite 900
Portland, Oregon  97204

    Attorney for Plaintiff

Page 1 - OPINION AND ORDER

Peter R. Mersereau
Karen M. Vickers
Mersereau & Shannon LLP
One S.W. Columbia Street, Suite 1600
Portland, Oregon  97258-2089

    Attorneys for Defendants

KING, Judge:

Plaintiffs A.V. and his parents Rene Villaraldo and Indhira Lopez bring claims against the Hillsboro School District and its officials for violations of Title VI of the Civil Rights Act of 1964, the Equal Protection Clause, Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, violation of ORS 659.850 (Oregon Discrimination in Education), and negligence, arising out of defendants placement of A.V. in the Limited English Proficiency ("LEP") program at his elementary school on the basis of race and national origin.  A.V. is a native-born, native English speaking Mexican-American/Hispanic child.

Before the court is defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (#6).  For the following reasons, I grant in part and deny in part defendants' motion.

## LEGAL STANDARDS

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(1) addresses the court's subject matter jurisdiction.  The party asserting jurisdiction bears the burden of proving that the court has subject matter jurisdiction over his claims.  Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).  A Rule 12(b)(1) motion may attack the substance of the complaint's jurisdictional allegations even though the allegations are formally sufficient.  St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989).

A failure to exhaust nonjudicial remedies is a "matter in abatement" that is "related" to the court's jurisdiction, but such a failure does not fall within any of the categories of reasons for dismissal specified in Rule 12(b). <u>Ritza v. International Longshoremen's and Warehousemen's Union</u>, 837 F.2d 365, 368-69 (9th Cir. 1988) (per curiam). Thus, a motion to dismiss for a failure to exhaust nonjudicial remedies is an unenumerated Rule 12(b) motion. <u>Id.</u> at 369. In deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact, but only with regard to the exhaustion issue. <u>Id.</u>

## DISCUSSION

Defendants assert that plaintiffs' claims fall under the Individuals with Disabilities Education Act ("IDEA") and, under that Act before filing suit, a plaintiff must exhaust remedies through a due process hearing. 20 U.S.C. §1415(f)(1); <u>Doe v. Maher</u>, 793 F.2d 1470, 1479 (9th Cir. 1986) ("We are satisfied that Congress did not intend a handicapped child to be able to circumvent the requirements or supplement the remedies of the [IDEA] by resort[ing] to the general antidiscrimination provision of § 504."). Alternatively, defendants argue that if plaintiffs exhausted their remedies, they failed to bring their appeal within 90 days of that resolution.

In order to resolve defendants' Motion to Dismiss, I must first evaluate whether plaintiffs' claims fall under the IDEA. The IDEA requires state or local agencies to "establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such agencies." 20 U.S.C. § 1415(a). If parents or guardians believe a problem is present, they may submit a complaint "with respect to any matter relating to the identification,

evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). The parent is entitled to a due process hearing.

However, the provision in the IDEA at issue here reads:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal statutes protecting the rights of children with disabilities, except that **before the filing of a civil action** under such laws **seeking relief that is also available under this subchapter**, the procedures under subsections (f) and (g) of this section **shall be exhausted** to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(*l*) (emphasis added). In sum, any student who wants "relief that is available under" the IDEA must exhaust administrative remedies. Id.

Defendants assert the crux of plaintiffs' case is that defendants placed A.V. in a program that was not right for A.V., and that defendants did so for an unlawful reason. As a result, A.V. has been denied a free appropriate public education. According to defendants, these allegations must first be addressed through the due process hearing called for by the IDEA.

Furthermore, defendants argue, the fact that plaintiffs seek only money damages does not avoid this result. Indeed, defendants contend that Robb v. Bethel School Dist. #403 directs the outcome of this case:

> [A] plaintiff cannot avoid the IDEA's exhaustion requirement merely by limiting a prayer for relief to money damages. We understand 'available' relief to mean relief suitable to remedy the wrong done the plaintiff, which may not always be relief in the precise form the plaintiff prefers. Our primary concern in determining whether a plaintiff must use the IDEA's administrative procedures relates to the source and nature of the alleged injuries for which he or she seeks a remedy, not the specific remedy requested. The dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's

Page 4 - OPINION AND ORDER

> administrative procedures and remedies.  If so, exhaustion of those remedies is
> required.  If not, the claim necessarily falls outside the IDEA's scope, and
> exhaustion is unnecessary.  Where the IDEA's ability to remedy a particular injury
> is unclear, exhaustion should be required to give educational agencies an initial
> opportunity to ascertain and alleviate the alleged problem.

308 F.3d 1047, 1049-50 (9th Cir. 2002) (internal citations omitted).  Defendants conclude that although plaintiffs have characterized their claims in such a way as to avoid the label of IDEA, in reality plaintiffs' claims are subject to the exhaustion requirement of that Act.

Plaintiffs bring six claims.  (1) In their Title VI Civil Rights Act claim, plaintiffs allege defendants discriminated against A.V. on the basis of race, which interfered with A.V.'s rights to, and protected activity of, an education.  They also allege that defendants' actions deprived the Villaraldos of an education for their son, and defendants unconstitutionally treated the Villaraldos different from non-Hispanic persons.  (2) In their Equal Protection claim, plaintiffs allege that defendants' failure to supervise resulted in the inappropriate placement of A.V. into the LEP program, and that it is the practice and custom and official policy of the District to place all children of the Mexican-American race in the LEP program regardless of their ability to speak English.  (3) and (4) In their ADA and Section 504 claims, plaintiffs allege A.V. was deprived of benefits under the IDEA because he was placed in the LEP program instead of getting IEP services.  (5) In their claim asserting a violation of ORS 659.850, plaintiffs allege defendants subjected A.V. to differential treatment by placing him in the LEP program solely on the basis of his race and national origin.  (6) Finally, in their claim of negligence, plaintiffs allege defendants breached their duty of providing a free and appropriate public education when they placed A.V. in the LEP program.

Page 5 - OPINION AND ORDER

Plaintiffs' first, second, and fifth claims are not subject to the IDEA's requirement of exhaustion of remedies. These claims do not focus on A.V.'s Individualized Educational Program ("IEP"). Instead, plaintiffs contend that it was defendants' policy and practice to place Mexican-American children in the LEP program, even when those children did not speak or understand Spanish. Plaintiffs allege that defendants "administered a Language Proficiency Test to A.V. because A.V. is recognizably a Mexican-American," that "the Language Proficiency Testing was not done pursuant to, or for the purposes of, an IEP," and the ESL teacher "said that A.V. belonged in the LEP class due to his Hispanic background and race." First Amended Complaint, ¶¶ 18, 19, 21. In sum, plaintiffs' claims address defendants' placement of A.V. in the LEP program based only on his race and national origin, and are not concerned with any duties or responsibilities of defendants' under the IDEA.

However, plaintiffs' third, fourth and sixth claims are focused on their contention that A.V. was deprived of educational benefits because, *rather than addressing his developmental delays*, defendants placed A.V. in an LEP program based on his race and national origin. These are claims that must first be addressed by defendants under the auspices of the IDEA.

Although plaintiffs met with defendants in a resolution meeting, and withdrew their due process request, asserting that they had "resolved the Due Process issues concerning A.V.'s IEPs," this is apparently not the case since plaintiffs have brought claims asserting that A.V. "was placed in the LEP program in lieu of designated IEP services," "was deprived of [individualized education] benefits," and as a result of those actions "A.V. is damaged and behind in school and will continue to fall behind." First Amended Complaint ¶¶ 26, 40, 44, and 51.

Page 6 - OPINION AND ORDER

These allegations are precisely the type of dispute which the IDEA is intended to help resolve, and plaintiffs' claims cannot circumvent the exhaustion requirements of that statute. IDEA allows disabled students and their parents the right to challenge "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child" in a due process hearing. 20 U.S.C. § 1415(b)(6). Any aggrieved party may then "bring a civil action with respect to the complaint presented." 20 U.S.C. § 1415(i)(2)(A). In short, plaintiffs must thrash out in a due process hearing any remaining disputes regarding defendants' denial of IEP services to A.V., allowing defendants a first crack at remedying any damage A.V. incurred when attending LEP classes rather than the program plaintiffs think would better serve him. If after a due process hearing, plaintiffs remain unhappy with the resolution, they can bring a civil action in court based on the administrative record created through the IDEA process.

Furthermore, I disagree with plaintiffs' assertion that the informal resolution hearing satisfies their duty to exhaust in this instance. Instead, I find helpful the remarks made in Lindsley v. Girard School Dist., 213 F. Supp. 2d 523 (W.D. Pa. 2002). The court noted, "[W]e are of the opinion that the voluntary resolution of a dispute concerning the education of a disabled or allegedly disabled child does not excuse exhaustion *unless* the parties stipulate on the evaluation, classification and placement of the child or utilize the available administrative procedures to develop these factual issues prior to settlement." Id. at 534 n.2 (emphasis in original). The court came to this conclusion because, "The Act does not envision courts as the factfinders in the first instance and provides the due process procedures so that state and local agencies can take 'primary responsibility for formulating the education to be accorded to a

handicapped child.'" Id. at 536 (quoting Board of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 207 (1982).

I also conclude that plaintiffs have failed to meet their burden in proving exhaustion would be futile. The Ninth Circuit has explained that exhaustion is required if the "alleged injuries . . . could be redressed to any degree by the IDEA's administrative procedures and remedies." Robb, 308 F.3d at 1050. I could not say that plaintiffs' injuries, at least with respect to any loss of educational benefits A.V. experienced because he was in the LEP program, could not be redressed through the administrative process.

## CONCLUSION

For the foregoing reasons, defendants' Motion to Dismiss (#6) is granted in part and denied in part. Plaintiffs' third, fourth and sixth claims are dismissed for failure to exhaust administrative remedies.

IT IS SO ORDERED.

Dated this ____5th_____ day of September, 2007.

      /s/ Garr M. King
      Garr M. King
      United States District Judge