IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| A.V. a minor, by his next friends and<br>parents, RENE VILLARALDO and<br>INDHIRA LOPEZ,<br><br>          Plaintiff,<br><br>   vs.<br><br>HILLSBORO SCHOOL DISTRICT 1J;<br>JEREMY LYON; TIM BISHOP; and<br>JEFF HAZEN,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Case No. 07-630-KI<br><br>OPINION AND ORDER |

Kevin C. Brague
The Brague Law Firm, LLC
13830 SW Walnut Lane
Tigard, Oregon 97223

      Attorney for Plaintiff

Page 1 - OPINION AND ORDER

Peter R. Mersereau
Karen M. Vickers
Mersereau & Shannon LLP
One S.W. Columbia Street, Suite 1600
Portland, Oregon  97258-2089

      Attorneys for Defendants

KING, Judge:

Plaintiff A.V., through his parents Rene Villaraldo and Indhira Lopez, brings claims against the Hillsboro School District, Superintendent Jeremy Lyon, Principal Tim Bishop, and ESL Teacher Jeff Hazen for violations of Title VI of the Civil Rights Act of 1964, the Equal Protection Clause, and a violation of ORS 659.850 (Oregon Discrimination in Education), arising out of defendants' placement of A.V. in the Limited English Proficiency ("LEP," also known as "ESL") program at his elementary school on the basis of race and national origin.  A.V. is a native-born, native English speaking Mexican-American/Hispanic child.

I previously dismissed Plaintiff's third, fourth and sixth claims for failure to exhaust administrative remedies.

Before the court is defendants' Motion for Summary Judgment (#26) on the remaining claims and Motion to Strike Declaration (#40).  For the following reasons, I grant in part and deny in part defendants' Motion for Summary Judgment and deny defendants' Motion to Strike.

## BACKGROUND

Beginning when A.V. was three years old, Northwest Regional Education Service District provided him with special education services.  He received those services as a result of developmental delays and an issue with his hearing.

The Hillsboro School District tested A.V. using the Bilingual Speech/Language Assessment.  At the top of the report, the District's Speech-Language Pathologist identified A.V.'s primary language as Spanish.  In the body of the report, the Speech-Language Pathologist reported A.V. heard both English and Spanish at home, but that he uses more English words. The Speech-Language Pathologist discontinued one test in Spanish because A.V. "communicated primarily in English and demonstrated limited use and understanding of the Spanish language." Brague Decl. Ex. B at 2.  In addition, "[a] Spanish conversation sample was attempted, however [A.V.] indicated that he didn't understand Spanish.  He repeatedly stated 'I don't know' when the examiner attempted to ask questions or comment in Spanish."  Id.  In the conclusion section of the report, the Speech-Language Pathologist reported that A.V.'s "Spanish vocabulary skills were measured to be in the extremely low range."  Id.  She also reported the observations of the speech pathologist who worked with A.V. in the classroom, who "indicated that [A.V.] uses primarily English in the classroom and the majority of the cognitive, social, and communications services he receives is provided in English within the classroom setting."  Id. at 1.

The District developed an Individual Education Plan ("IEP") for A.V. that identified A.V. as having limited English proficiency.  It also reported that A.V. had suffered from developmental delays and that there had previously been concerns about his hearing.  The IEP also stated, "[A.V.] could not speak Spanish and responded in testing mainly in English" and "the clinician was unable to obtain a score on the Expressive Communication portion of the test because [A.V.] refused to respond in Spanish."  Brague Decl. Ex. A at 3.  The IEP made a placement recommendation for a regular education classroom, providing the benefits of being among "peers who serve as models for appropriate social/language use."  Brague Decl. Ex. A at

6.  Additionally, the IEP contained the following statement:  "The Eligibility Team has considered the student's special education eligibility, and determined that the eligibility **is not** due to a lack of instruction in reading, math or due to limited English proficiency."  Id. at 7 (emphasis in original).

Plaintiff began kindergarten at Orenco Elementary in September 2005.  Plaintiff's mother, Indhira Lopez, completed the registration form for him and did not indicate A.V.'s native language or ethnic group.

Defendant Jeff Hazen, English as a Second Language ("ESL") teacher, reviewed A.V.'s file and concluded that he may qualify for ESL services.  Hazen tested A.V. in September.  Lopez knew that Hazen had tested A.V.[1]  In accordance with the District's guidance on Assessment of LEP Students, ESL staff are to "provide[] the proficiency test results to the parents through the Parent Notification Form that goes out to the parents showing the language level of their children and what services they will receive."  Brague Decl. Ex. E at 1.  Lopez was not provided with a Parent Notification Form showing what services the District would provide A.V.  Defendants claim the test results showed A.V. had limited English proficiency and qualified for ESL services.

Instructional Program and Educational Approaches for LEP Students, which is the District's guidance to teachers on standards and criteria for ESL services, lists the factors to be considered in evaluating English proficiency.  Those steps are as follows:  1.  Home Language Survey/ESL Intake Form; 2.  Previous education/grades; 3.  Language spoken at home; 4.  Score

---

[1]In her Declaration, Lopez claims she "was never informed A.V. was placed in an ESL class, or that he was tested for such a placement."  Lopez Decl. ¶ 9.  In her deposition, however, she admitted that Hazen told her he had tested A.V.  Lopez Dep. 40:3-5.

on the Dutro Express Placement Assessment and/or Woodcock Munoz Language Survey-Revised;[2] 5.  Literacy level in the first language using the Evalucion del Desarrollo de la Lectura (EDL); 6.  Reading, writing, and math RIT scores.  Brague Decl. Ex. F at 6.

The District did not obtain a home language survey, the language was primarily English at home from the time A.V. was three years old, there is no indication A.V.'s literacy level was obtained, and A.V.'s reading, writing and math scores were low due to his documented developmental delays.

Additionally, the District has identified Entrance Criteria for ESL students.  Brague Decl. Ex. G at 1.  Defendants also did not follow the Entrance Criteria, which require the evaluation of the following factors:  1.  New to the culture of the school and community; 2.  Little or no prior school experience; 3.  Non-English speaking and score Level 1, 1-2, or 2 on the Woodcock Munoz Language Screen; and 4.  Parental input and consent.

A.V. is not new to the culture of the school and community and he had prior school experience through Northwest Regional Education Service District; A.V. is a native English speaker, and all his scores save one were above a 2; the District did not obtain parental input or consent.

A.V. received ESL services.  Lopez called to request that services be stopped.  In mid-September 2005, Lopez spoke with Hazen about why A.V. was in the ESL classroom.  Hazen told Lopez the program was mandatory and not up to parents.  Hazen questioned Lopez about

---

[2] The District has explained the Dutro Express Placement Assessment is used only to test a large number of students.

wanting A.V. removed from the ESL class. Lopez never received any indication the District stopped providing A.V. with ESL services.

In November 2005, A.V.'s parents transferred him to a different school in the District.

The April 5, 2006 IEP identified plaintiff as having limited English proficiency.

A.V. remained on the ESL case load until October 7, 2006. The District contends it was waiting to hear from A.V.'s parents about whether A.V. should continue to receive ESL services. The parties dispute whether A.V. continued to receive ESL services from September 2005 through October 2006. Defendants assert plaintiff received services for one month. Plaintiff asserts A.V. received an award from ESL in the Spring of 2006 and that A.V. complained about Hazen speaking Spanish. Defendants have no document showing A.V. exited the ESL program until October 2006.

According to Lopez, she and A.V.'s father spoke with Hazen in October 2006. Hazen explained A.V. was in the program based on his eligibility from last year. He told them that A.V. was "placed in the ESL program based on his race and that the District could not test Anglo kids because we know their native language is English." Lopez Decl. ¶ 14. According to Lopez, Hazen also said that "A.V.'s origin is Hispanic or Mexican so his ethnicity and background and the native language is Spanish." Id. According to Lopez, A.V.'s classroom teacher "commented that A.V. was behind in reading so the ESL program would help him with that . . . [and] A.V. qualified for the government funded program (meaning ESL) and he should stay in there so he wouldn't take a spot in the reading program." Id.

The first record indicating the District removed A.V. from ESL was on October 5, 2006. Defendant Tim Bishop provided a typewritten note and related forms.

Page 6 - OPINION AND ORDER

On October 18, 2006, the District changed A.V.'s IEP to reflect that he did not have limited English proficiency.

On November 14, 2006, plaintiff requested a Due Process hearing with the Superintendent for Public Instruction, challenging the May 2, 2005 and April 5, 2006 IEPs. The parties resolved the issue at a hearing on December 28, 2006. The matter was dismissed with prejudice on December 29, 2006.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

Defendants seek summary judgment on a number of theories. They first assert that plaintiff failed to exhaust his administrative remedies. This argument was previously the subject of a Motion to Dismiss. Defendants also claim to be entitled to summary judgment on plaintiff's Title VI claim because they assert there is no evidence of discrimination and the individual defendants cannot be liable under Title VI. They argue summary judgment is proper on plaintiff's Equal Protection claim because it is subsumed by the Title VI claim, there is no

evidence of a constitutional violation, the District cannot be held liable, and the individual

defendants are not liable or are entitled to qualified immunity.  Finally, defendants assert that

plaintiff has no private right of action under ORS 659.850.

I.      Failure to Exhaust Administrative Remedies

Defendants assert that under the Individuals with Disabilities Education Act ("IDEA"), a

plaintiff must exhaust remedies through a due process hearing even where the claim is brought

pursuant to a different statute.  See 20 U.S.C. §1415(f)(1); Doe v. Maher, 793 F.2d 1470, 1479

(9th Cir. 1986) ("We are satisfied that Congress did not intend a handicapped child to be able to

circumvent the requirements or supplement the remedies of the [IDEA] by resort[ing] to the

general antidiscrimination provision of § 504.").  Defendants claim plaintiff seeks the same relief

under his remaining claims as those I previously dismissed for failure to exhaust.

I previously concluded that plaintiff's remaining claims were not subject to the IDEA's

requirement of exhaustion of remedies.  These claims do not focus on A.V.'s IEP.  Instead,

plaintiff contends that it was defendants' policy and practice to place Mexican-American children

in the LEP program, even when those children did not speak or understand Spanish.  Plaintiff

alleges that defendants "administered a Language Proficiency Test to A.V. because A.V. is

recognizably a Mexican-American," that "the Language Proficiency Testing was not done

pursuant to, or for the purposes of, an IEP," and the ESL teacher "said that A.V. belonged in the

LEP class due to his Hispanic background and race."  First Amended Complaint, ¶¶ 18, 19, 21.

In sum, plaintiff's claims address defendants' placement of A.V. in the LEP program based only

on his race and national origin, and are not concerned with any duties or responsibilities of

defendants' under the IDEA.

Page 8 - OPINION AND ORDER

Defendants have not identified any recent case law warranting a different outcome on this issue.

II.    Title VI Claim

    A.    Whether Plaintiff has Produced Sufficient Evidence to Survive Summary Judgment

In his Title VI Civil Rights Act claim, plaintiff alleges defendants discriminated against A.V. on the basis of race, which interfered with A.V.'s rights to, and protected activity of, an education.  He also alleges that defendants' actions deprived the Villaraldos of an education for their son, and defendants unconstitutionally treated the Villaraldos different from non-Hispanic persons.

Title VI of the Civil Rights Act of 1964 provides that no person shall, "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

Defendants argue there is no evidence of discrimination.  They assert Hazen placed A.V. in ESL classes for less than a month for the legitimate reason that he qualified for services.

Title VI prohibits only intentional discrimination.  Alexander v. Sandoval, 532 U.S. 275, 280 (2001).  Plaintiff must make a prima facie case of discrimination but, at summary judgment, the degree of proof necessary is "minimal and does not even need to rise to the level of a preponderance of the evidence."  Lyons v. England, 307 F.3d 1092, 1112 (9th Cir. 2002) (internal quotation omitted).  Plaintiff may demonstrate a prima facie case by direct evidence of discriminatory intent.  Direct evidence of discriminatory intent is "evidence which, if believed,

proves the fact [of discriminatory animus] without inference or presumption." <u>Vasquez v. County of Los Angeles</u>, 349 F.3d 634, 640 (9th Cir. 2003) (discriminatory remark by a non-decisionmaker is not direct evidence because there is no evidence of a nexus between the remark and the subsequent decision) (internal quotation omitted).

A.V. provides a declaration from his mother relating several conversations she had with Hazen.  In September 2005, Hazen told her the ESL class was mandatory and not up to parents. When Lopez asked that A.V. be removed from the ESL class, Hazen questioned her about it.  In October 2006, Hazen told Lopez and her husband that A.V. was in the class because he was eligible from last year.  He said A.V. was placed in the program because of his race and that the District did not test Anglo kids because they speak English.  After A.V.'s parents explained that they speak English at home, Hazen said it did not matter because A.V. was Hispanic or Mexican and the native language is Spanish.  According to Lopez, Principal Bishop said that "what Mr. Hazen did was right."  Lopez Dep. 61:9-12.

A.V. also provides a declaration from another guardian, Richard Ferry, who describes how Hazen automatically enrolled his Vietnamese nieces in the ESL program, even though they were born in the United States and are native English speakers.

Defendants contend that the single statement by one teacher is not enough to constitute evidence of discriminatory intent.  Defendants also move to strike Richard Ferry's declaration on the basis that it is irrelevant and is not referenced in plaintiff's Concise Statement of Material Facts.

Hazen's comments are more than stray remarks.  Hazen allegedly made these statements as the decisionmaker on A.V.'s placement in the ESL class and his comments indicate he was

Page 10 - OPINION AND ORDER

motivated by A.V.'s race in making that decision. Lopez also describes A.V.'s teacher telling

her that A.V. needed help with reading and that since A.V. qualified for the government-funded

ESL program he should not take a spot in the reading program. These comments tend to show

direct evidence of discrimination.

Additionally, defendants' motion to strike should be denied. Defendants fail to cite to a

rule requiring that all declarations be referenced in the concise statement of material facts.

Rather, the rules make clear that the Court has no duty to search any portion of the record not

referenced in the statement. In other words, it is to the party's benefit to cite the record, but there

is no prohibition on submitting additional material. Furthermore, the declaration is relevant. Just

as in an employment discrimination case, testimony of other individuals who are the objects of

discrimination is relevant. See e.g., Heyne v. Caruso, 69 F.3d 1475, 1479 (9th Cir. 1995)

(suggesting that the Supreme Court has found "evidence of the employer's discriminatory

attitude *in general* is relevant and admissible to prove race discrimination").

Alternatively, even if this evidence were not sufficient to show direct discrimination,

plaintiff may make a prima facie case by a presumption arising from factors set forth in

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Noyes v. Kelly Services, 488

F.3d 1163, 1168 (9th Cir. 2007). Generally stated, the factors are: (1) membership in a protected

class; (2) performed in a satisfactory manner; (3) suffered an adverse decision; and (4) different

treatment than those similarly situated outside of the protected class. McDonnell Douglas, 411

U.S. at 802.

Defendants do not argue that plaintiff fails to meet these criteria. Accordingly, whether

through direct or indirect evidence, I find plaintiff has made out a prima facie case.

Page 11 - OPINION AND ORDER

If established, the prima facie case creates a rebuttable presumption that the employer unlawfully discriminated against the plaintiff.  Id.  The burden of production then shifts to the allegedly discriminating actor to articulate a legitimate, nondiscriminatory reason for its action.  Id.  If the actor meets this burden, the presumption of unlawful discrimination "simply drops out of the picture."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).  The plaintiff then must produce sufficient evidence to raise a genuine issue of material fact as to whether the actor's proffered nondiscriminatory reason is merely a pretext for discrimination.  Coleman v. Quaker Oats Co., 232 F.3d 1271, 1282 (9th Cir. 2000).

"[A] plaintiff can prove pretext in two ways:  (1) *indirectly*, by showing that the [actor's] proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) *directly*, by showing that unlawful discrimination more likely motivated the [actor]."  Noyes, 488 F.3d at 1170 (internal citation and quotation omitted).

Defendants assert that they have a legitimate nondiscriminatory reason for their action–they placed A.V. in ESL classes for less than a month because he qualified for the services.

A.V. has provided sufficient evidence to show pretext.  There is a question about why Hazen tested A.V. in the first place, a question about whether A.V. qualified for ESL services, and a question about how long he was in the program.  A.V. provides evidence that Hazen told A.V.'s parents A.V. belonged in the ESL class because of his Hispanic background and race.  The Bilingual Speech/Language Assessment Report in June 2005 found that A.V. "didn't understand Spanish" and that he "repeatedly stated 'I don't know'" when asked questions in Spanish.  Brague Decl. Ex. B.  Indeed, "[s]tandardized measures of Spanish language were

discontinued due to [A.V.'s] limited Spanish language skills." Id. The report reflected A.V.'s developmental delays and his use of English in the classroom. Id. The IEP stated A.V. could not speak Spanish.

Although Hazen administered the Woodcock Munoz Language Screen to determine whether A.V. qualified for ESL, he did not evaluate the other criteria in the District's Instructional Program and Educational Approaches for LEP Students or the Entrance Criteria, casting doubt on Hazen's reasons for placing A.V. in the ESL class. As for how long A.V. remained in ESL classes, plaintiff submitted evidence that A.V. received an award from the ESL teacher in the Spring of 2006, well after defendants assert A.V. stopped receiving ESL services. In addition, plaintiff presents evidence A.V. complained about Hazen speaking Spanish. Defendants have no document showing A.V. exited the ESL program.

In sum, plaintiff has provided sufficient evidence to show defendants' reason is pretextual. Defendants' motion for summary judgment on this claim is denied.

B.    Whether Plaintiff May Assert a Claim Against the Individual Defendants

Defendants contend that Lyon, Bishop and Hazen should be dismissed because a plaintiff may only seek relief from the recipient of federal funding under Title VI. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1169-70 (11th Cir. 2003). Plaintiff responds, without citation to any case law, that Hazen's, Bishop's and Lyon's salaries consist of Federal funds by virtue of their employment with the District.

Title VI applies only to funding recipients. Hazen, Bishop and Lyon are not funding recipients. Plaintiff's Title VI claim is dismissed against Hazen, Bishop and Lyon.

Page 13 - OPINION AND ORDER

III.    Equal Protection Claim

In their Equal Protection claim, pursuant to Section 1983, plaintiff alleges that defendants discriminated against A.V. on the basis of race, that defendants' failure to supervise resulted in the inappropriate placement of A.V. into the LEP program, and that it is the practice and custom and official policy of the District to place all children of the Mexican-American race in the LEP program regardless of their ability to speak English.

A.    Whether Section 1983 Claim is Subsumed by Title VI

Defendants assert that plaintiff's Equal Protection claim is subsumed by the Title VI claim.

"When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 US 1, 20 (1981). In determining whether an act subsumes a Section 1983 action, the court must examine whether Congress intended the act to supplant any remedy that would otherwise be available under Section 1983. Id. at 21. Intent may be inferred when the statutory scheme is incompatible with enforcement under Section 1983. City of Rancho Palos Verdes, Cal. v. Abrams, 544 U.S. 113, 120 (2005). Defendants bear the burden. Golden State Transit Corp. v. City of L.A., 493 U.S. 103, 107 (1989).

The Ninth Circuit has not yet addressed the question of whether Title VI precludes an action under Section 1983. Two district courts in the Ninth Circuit have concluded it does. Alexander v. Underhill, 416 F. Supp. 2d 999 (D. Nev. 2006); Travis v. Folsom Cordova Unified School Dist., 2007 WL 529840 (E.D. Cal. 2007). The Seventh Circuit and Western District of

New York have held similarly.  Boulahanis v. Board of Regents, 198 F.3d 633 (7th Cir. 1999);

Bayon v. State Univ. of New York at Buffalo, 2001 WL 135817 (W.D.N.Y. 2001).

On the other hand, one district court in the Ninth Circuit has come down the other way.

Gensaw v. Del Norte County Unified School Dist., 2008 WL 1777668 (N.D. Cal. 2008)

(administrative remedies not an "elaborate procedural mechanism").  The Third Circuit and First

Circuit have also concluded that Title VI does not preclude a Section 1983 claim.  Powell v.

Ridge, 189 F.3d 387 (3rd Cir. 1999), overruled on other grounds by Alexander v. Sandoval, 532

U.S. 275 (2001); Cousins v. Sec'y of US Dep't of Transp., 857 F.2d 37 (1st Cir. 1988).

I am persuaded by the analysis in Gensaw for all the reasons stated in that Opinion and

find that defendants have not met their burden of showing plaintiff's Equal Protection claim is

subsumed by Title VI.

B.    Whether Plaintiff has Evidence of an Equal Protection Violation

In order to prevail on an Equal Protection claim, plaintiff must show intentional

discrimination.  Reese v. Jefferson School Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000).

Based on the above Title VI analysis, plaintiff has produced some evidence of direct racial

animus and some evidence of system-wide disparate treatment in educational services offered to

different races.

Defendants assert that even if plaintiff has some evidence of differential treatment, their

actions meet the strict scrutiny test.  They argue that Hazen gave A.V. a language proficiency test

to determine if he was entitled to ESL services, so defendants' actions were narrowly tailored to

serve a compelling state interest.

Plaintiff points out that A.V.'s Bilingual Speech Assessment indicated A.V. could not speak Spanish and that the Placement Determination directed that A.V. should be with peers to serve as models for appropriate social language use. As I note above, questions remain as to why Hazen gave A.V. the test in the first place and whether defendants improperly retained A.V. in the ESL class. Defendants' actions do not meet the strict scrutiny test.

C.    Monell Liability

Defendants argue that the District cannot be held liable for any equal protection violation. Defendants assert there is no evidence of any policy or custom of placing children like A.V. in the ESL program.

A plaintiff may bring a claim against a municipality as a "person" under section 1983. Monell v. Department of Social Svcs. of New York City, 436 U.S. 658, 690 (1978). A plaintiff may establish local governmental liability by demonstrating that: (1) a governmental employee committed the alleged constitutional violation pursuant to a formal governmental policy or a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity;" (2) the individual who committed the constitutional tort was an official with "'final policy-making authority' and that the challenged action itself thus constituted an act of official governmental policy;" or (3) "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992), cert denied, 510 U.S. 932 (1993) (internal citations omitted).

Plaintiff has produced no evidence of any personal involvement by Superintendent Lyon. Hazen's actions, however, in placing A.V. in the ESL program were ratified by Principal Bishop

Page 16 - OPINION AND ORDER

when he told Lopez after the fact that Hazen acted appropriately.  The question, then, is whether Principal Bishop has "final policy-making authority."  Plaintiff contends that Principal Bishop "may be the final policy maker with respect for Section 1983 liability based on his Job Description which states 'The principal is the chief administrative leader of the school.'"  Pl.'s CSMF ¶ 18.

Whether an individual has final policy-making authority is a question of state law. Gillette, 979 F.2d at 1346.  Plaintiff provides no evidence or legal authority to support the proposition that Principal Bishop is a final policy-maker for the District.  Principal Bishop may be the chief administrative leader of the *school*, but his ratification of Hazen's actions do not make the *District* liable as a final policy-maker.  Additionally, plaintiff has not met his burden to present evidence from which a rational trier of fact could find that the District had a policy, practice, or custom that caused the alleged deprivations of plaintiff's civil rights under Monell. Accordingly, defendants' motion for summary judgment on this basis is granted and plaintiff's Equal Protection claim against the District is dismissed.

D.    Individual Liability

Defendants argue Superintendent Lyon and Principal Bishop had no involvement in the alleged constitutional deprivation.

A "supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Plaintiff does not offer any argument in opposition.

Page 17 - OPINION AND ORDER

Although there is evidence Bishop knew about Hazen's actions after the fact, there is no evidence he participated in the violation or directed the violation. There is no evidence Lyon acted in an unconstitutional manner. As a result, the equal protection claim must be dismissed against the individual defendants Lyon and Bishop.

E.    Qualified Immunity

The only remaining defendant in plaintiff's Equal Protection claim is Hazen. Defendants assert Hazen is entitled to qualified immunity.

The Supreme Court formulated the following objective qualified immunity standard:

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The qualified immunity defense protects all government officials except those who are "plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). A ruling on the defense should be made early in the proceedings so that the costs and expenses of trial are avoided if the defense is dispositive. Saucier v. Katz, 533 U.S. 194, 200 (2001).

Courts use a three-step test to determine if a defendant is entitled to qualified immunity on a federal constitutional claim. First, the court determines if the facts alleged, viewed in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a constitutional right. Brown v. Li, 308 F.3d 939, 946-47 (9th Cir. 2002), cert. denied, 538 U.S. 908 (2003) (relying on Saucier). If the facts show a constitutional violation, the court decides if the constitutional right at stake was clearly established at the time of the alleged violation. If so,

the final inquiry is whether an objectively reasonable government actor would have known that his conduct violated the plaintiff's constitutional right. Id. at 947. Plaintiff has the burden of proving that a right is clearly established. Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002).

As described above, plaintiff has alleged that Hazen violated plaintiff's right to equal protection. This right was clearly established. Plaintiff submits a pamphlet from the U.S. Department of Education, Office for Civil Rights, that was revised in 1998. The pamphlet instructs districts that they "may not segregate students on the basis of race, color, or national origin in making classroom assignments . . . . Schools must be able to demonstrate valid and nondiscriminatory reasons for . . . assignments [to classes with a substantially disproportionate number of minority or nonminority students]. . . . Students may be assigned to [limited-English proficient] courses only when appropriate and nondiscriminatory evaluation, placement and exiting criteria and procedures are followed." Brague Decl. Ex. K at 1. Plaintiff has satisfied his burden.

An objectively reasonable government actor would have known that his conduct violated plaintiff's right to equal protection. Here, Hazen tested A.V., a U.S. born, native English speaking child, for ESL services, and placed him in an ESL class, when a prior evaluation indicated that A.V. did not speak Spanish. Hazen did not comply with the Instructional Program and Educational Approaches for LEP Students or the Entrance Criteria in determining whether A.V. qualified for ESL services. Hazen's statements indicate he thought A.V. qualified for the services based on his race. Hazen is not entitled to qualified immunity.

Page 19 - OPINION AND ORDER

IV.    <u>ORS 659.850</u>

In his claim asserting a violation of ORS 659.850, plaintiff alleges defendants subjected

A.V. to differential treatment by placing him in the LEP program solely on the basis of his race

and national origin.

Defendants contend the statute does not provide a private right of action.  Subsequent

amendments to the statute providing for a private right of action do not apply to actions arising

before July 1, 2007.  This action arose no later than October 2006.  Accordingly, the statute A.V.

invokes allows lawsuits only in the case of higher education discrimination.

Plaintiff has no argument in opposition.  This claim is dismissed.

## CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment (#26) is granted in

part and denied in part.  Plaintiff may proceed with his Title IV claim against the District only,

his Equal Protection claim against Hazen only, and his statutory claim is dismissed with

prejudice.  Defendants' Motion to Strike (#40) is denied.

IT IS SO ORDERED.

Dated this _____18th_____ day of December, 2008.


    /s/ Garr M. King
Garr M. King
United States District Judge